UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------

                                 X

**A&G Coal Corporation and**

**Meg-Lynn Land Company, Inc.,**

                          Petitioners,

           -against-

**Integrity Coal Sales, Inc.,**

                          Respondent.

----------------------------------------

12 Civ. 5293 (ALC)

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5-21-13

**ANDREW L. CARTER, JR., District Judge:**

      Petitioners A&G Coal Corporation and Meg-Lynn Land Company, Inc. bring this petition to vacate an arbitration award (the "Arbitration Award") against Respondent Integrity Coal Sales, Inc.  Respondent opposes Petitioners' motion and cross-petitions to confirm the Award in their favor.  Because Petitioners fail to set forth any legitimate grounds for vacating the Award, Petitioners' petition is DENIED, and Respondent's cross-petition is GRANTED.

## BACKGROUND

      This dispute centers on a claim over two contracts for the sale of metallurgical coal by A&G Coal Corporation/Meg-Lynn Land Company (collectively "A&G" or "Petitioners") and the purchase by Integrity Coal Sales, Inc. ("Integrity" or "Respondent").  Both contracts provided that any dispute between the parties should be resolved through arbitration with the arbitrator's decision "final and binding on both parties."  (CL Exhs. 1 & 2).

      In September 2008, A&G filed a declaratory judgment action against Integrity in the U.S. District Court for the Western District of Virginia seeking the court's declaration that A&G had

no liability under the two contracts. <u>A&G Coal Corp. v. Integrity Coal Sales, Inc.</u>, 600 F.Supp. 2d 709 (W.D. Va. 2009). The court found that the parties had agreed to arbitrate such disputes and dismissed the action. On May 27, 2009, the parties entered into a Stipulation for Arbitration and Selection of Arbitrator, selecting the Honorable John Lifland, retired United States District Judge, as arbitrator (JR at 1.) They submitted their controversy to arbitration with JAMS. (JR 1.) The arbitration commenced on June 17, 2009. (JR 2-30.) Integrity sought damages for breach of contract arising from A&G's alleged failure to deliver coal under the 2007 and 2008 contracts. (Ex. A, JR 1015.) Integrity admitted evidence that it had roughly 74,000 tons (out of 120,000) remaining on the 2007 contract when the parties negotiated the 2008 contract in September 2007 and that neither party expected the 2007 contract to be finished by the end of 2007. (JR at 1017-23.) A&G counterclaimed and sought damages for Integrity's first material breach of contract arising from Integrity's failure to order coal and submit timely payments under the 2007 contract. (Ex. A, JR 1015.)

The parties offered evidence at the final hearing, which lasted from February 8 to 10, 2012. Judge Lifland gave the parties an opportunity to submit post-hearing briefs 30 days after the final hearing was completely transcribed. A&G filed over 150 pages of briefing in connection with the final hearing. (JR at 258, 515, 571, 671, 760.) On May 29, 2012, Judge Lifland issued a Partial Final Award, finding that A&G had breached both contracts by failing to deliver 156,326.60 tons of coal to Integrity. (JR at 823.) He awarded Integrity $21,074,300.30 in damages based on the market price – contract price differential. <u>Id.</u> He also denied A&G relief on its counterclaim. <u>Id.</u> The Partial Final Award left open the issue of Integrity's request for attorneys' fees and expenses. (JR 850.) On June 8, 2012, A&G filed a Motion to Correct Computational, Typographical or Other Similar Errors in the Partial Final Award ("Motion to

Correct"), which Integrity opposed. (JR 852-70.) The Arbitrator denied that motion by Order dated June 22, 2012. (JR 888-89.) The Arbitrator issued a Final Award dated July 16, 2012, (JR 1010-45), which restated the Partial Final Award mostly verbatim, but also denied Integrity's claim for attorneys' fees brought under Paragraph VII of the General Terms and Conditions of the two purchase orders ("Contracts") for the sale of coal – Contracts 10774 ("2007 Contract") (JR Clmt. Ex. 2) and 10906 ("2008 Contract") (JR Clmt. Ex. 3). (Ex. A, JR 1036-43.)

Integrity filed the Final Award. (JR at 1010.) A&G has filed an amended petition to vacate or modify the Arbitration Award. Integrity opposes this petition and has filed a cross-petition to confirm the Arbitration Award.

## DISCUSSION

### A. Applicable Legal Standards

"The court's function in confirming or vacating an arbitration award is severely limited." Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (citation and alterations omitted) (describing the "twin goals or arbitration" as "settling disputes efficiently and avoiding long and expensive litigation").[1] "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (citations and alterations omitted). Moreover, a party moving to vacate an arbitration award bears a "heavy burden of

---

[1] The FAA does not "independently confer subject matter jurisdiction on the federal courts." Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009). "[T]here must be an independent basis of jurisdiction before a district court may entertain petitions" to confirm or vacate an award under the FAA. Id. (internal quotation marks). In this case, the court has subject-matter jurisdiction under 28 U.S.C. § 1332.

showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004).

Section 10(a) of the Federal Arbitration Act ("FAA") sets forth four bases for vacatur of an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Second Circuit, as a "judicial gloss" on the aforementioned bases for vacatur, recognizes two additional grounds upon which an award may be vacated: namely, where the arbitrator's award is in "manifest disregard" of the law or the terms of the relevant agreement between the parties. Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 451–52 (2d Cir. 2011). A&G argues that it is entitled to vacatur of the Arbitration Award under §10(a)(4) and the "manifest disregard" doctrines.

B. Overview

A&G argues that it is entitled to vacating the Arbitration Award based on four separate reasons: (i) Judge Lifland exceeded his authority; in violation of FAA Section 10(a)(4); (ii) Judge Lifland manifestly disregarded the law; (iii) Judge Lifland manifestly disregarded the parties' contract; and (iv) Judge Lifland "stray[ed]" from the contract terms and "dispens[ed] his own brand of industrial justice." (A&G's Memorandum of Law in Support of Petition at 13-16.)

4

A&G alleges in its Petition that: (a) Judge Lifland awarded damages higher than Integrity initially sought in certain pre-hearing filings; (b) Judge Lifland based his decision primarily on an allegedly unenforceable oral agreement, despite the lack of a formal contract amendment; (c) Judge Lifland failed to find that an alleged condition precedent to A&G's obligations was satisfied; (d) Judge Lifland failed to cite any New York cases in the Final Award; (e) Judge Lifland improperly admitted testimony from Jerry Wharton, the former owner of A&G, concerning his purported financial worth and the sale of A&G; (f) Judge Lifland made contradictory findings after the award became final; (g) Judge Lifland disregarded the requirement that Integrity prove its ability to perform; and (h) Judge Lifland erroneously calculated damages. (Petition ¶ 16.)

C. Section 10(a)(4)

A&G also seeks to vacate the award pursuant to § 10(a)(4) of the FAA, which provides for vacatur if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4)." Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003) (citation omitted). The Court's "inquiry focuses on whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Id. (citation omitted). The primary concern of the reviewing court is "whether the arbitrators acted within the scope of their authority, or whether the arbitral award is merely the arbitrators' own brand of justice." Id. (citation and alterations omitted). In answering this question, the arbitrator's decision is afforded great deference: "as long as the arbitrator is even

5

arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." Reliastar Life Ins. Co. v. EMC Nat'l Life Co., 564 F.3d 81, 86 (2d Cir. 2009).

A&G's argues that vacatur is appropriate because Judge Lifland exceeded his authority. Vacatur under § 10(a)(4) is "accorded the narrowest of readings" and "focuses on whether the arbitrators had the power . . . to reach a certain issue." Banco de Seguros, 344 F.3d at 262. The parties' JAMS submission agreement and the arbitration clauses in each purchase order are broad in scope and empowered Judge Lifland to resolve "all disputes, claims and controversies relating to Purchase Orders 10774 and 10906." (JR at 1). Under these agreements, Judge Lifland had the power to decide whether the 2007 contract was extended into 2008. (Id.) He also had the power to determine if A&G breached the 2007 and 2008 contracts and whether (and by how much) Integrity was damaged. (Id.) Judge Lifland's authority included the power to determine the two issues that A&G says he got wrong: (1) the impact of the asterisked language in the 2008 contract; and (2) the number of tons on which the damage calculation should be based. (Id.) Section 10(a)(4) is thus completely unavailable to A&G. Even if Judge Lifland reached the wrong result, Judge Lifland's decision will not be vacated on this ground as long as Judge Lifland was arguably acting within the scope of his authority. See Reliastar, 564 F.3d at 86. Judge Lifland did not violate any express limitation on his authority. Even reaching the wrong result on a legal question entrusted to the arbitrator is not an act that "exceeds" the arbitrator's "power." See, e.g., Banco de Seguros, 344 F.3d at 262. Judge Lifland did not violate any express limitation on his authority. Because Judge Lifland was arguably acting within the scope of his authority, the Arbitration Award will not be vacated under § 10(a)(4).

D. "Manifest Disregard" of Law

A&G additionally argues that the Arbitration Award should be vacated because it was rendered in "manifest disregard of the law." The "manifest disregard" standard requires that the challenging party satisfy two prongs: (1) that the "governing law" was "well defined, explicit, and clearly applicable," and (2) that the arbitrator knew about "the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 452 (2d Cir. 2011) (citations omitted). The "manifest disregard" doctrine is "severely limited," and "extreme[ly] deferen[tial] to arbitrators." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) (citations omitted). The Second Circuit has described the "manifest disregard" doctrine as "a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." Id. (citation omitted). Indeed, courts will not vacate an award under this standard "because of a simple error in law or a failure by the arbitrators to understand or apply it but only when a party clearly demonstrates that the panel intentionally defied the law." STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (citation omitted) (upholding an arbitration award where the arbitrators did not explain the reason for their decision, but where the court could discern a valid ground for it).

A&G's second and third grounds for vacatur are that Judge Lifland manifestly disregarded governing law and the terms of the parties' agreement by improperly relying on an oral agreement as parol evidence. According to the award, the purported oral agreement was that performance of the 2007 Contract would extend until March 31, 2008. (JR 2010, 1032). A&G argues that Judge Lifland enforced the oral agreement to extend the 2007 Contract, rather than

the written contract terms. (A&G Opp. at 11-12). Paragraph XIV of the Contracts' General

Terms and Conditions requires modifications of the Contracts to be in writing. A&G argues that

he summarily disregarded the writing requirement in Paragraph XIV and imposed his own

policy, holding, "Nothing more is required to satisfy the writing requirement of Paragraph XIV"

than an inference from the oral agreement where fraud is not alleged. (JR 1022.) A&G relies on

the phrase in the Final Award "there is no writing referring in so many words to the oral

agreement" to suggest that Judge Lifland must have enforced an oral agreement. (JR at 1021.)

Integrity interprets Judge Lifland's statement that there is no writing "in so many words" to

mean that the addition to the 2008 contract is not a word-for-word transcript of the parties' oral

agreement. Integrity argues that the Arbitration Award makes clear that Judge Lifland accepted

Integrity's argument that the 2008 contract memorialized the oral agreement between the parties

to extend the 2007 contract.

   A&G argues that improperly crediting the oral agreement over the written terms is the

only way that Judge Lifland could possibly hold A&G liable on the 2007 or 2008 Contract and

award $21 million. (A&G Reply to Opp. at 6). A&G contends that Judge Lifland awarded

punitive damages of over $21 million effectively in violation of Article 1-106 of the New York

Uniform Commercial Code.

   Judge Lifland found that Integrity was entitled to compensation for the full amount of all

undelivered coal under both contracts, including all amounts not ordered. (Ex. A, JR 1035; see

also JR 889.) Judge Lifland awarded $3,074,300.30 under the 2007 Contract. This was calculated

by taking the $118.58 market price that he inferred for February 20, 2008, subtracting the actual

purchase price of $64, and multiplying by 56,326.50 undelivered tons. (Ex. A, JR 1034-35.) For

the 2008 Contract, he awarded $18,000,000 to Integrity. This was calculated by taking the

undisputed market price of $250 on September 5, 2008, subtracting from that the purchase price of $70, and multiplying by the full contract tonnage – 100,000 undelivered tons. (Ex. A, JR 1035-36.) Thus, he awarded Integrity a total amount of $21,074,300.30.

Integrity counters that Judge Lifland acknowledged the legal principle asserted by A&G regarding the need for written amendment to the contract and the burden to prove an ability to perform. (JR at 1017-23 (need for writing); JR at 889 (ready, willing, and able).) Judge Lifland applied the law to the facts as he determined them and reached a result that A&G now challenges.

A&G's argument that the Arbitration Award should be vacated relies on Judge Lifland's refusal to apply the applicable New York Uniform Commercial Code ("UCC"). Specifically, A&G contends that, by imposing damages for the full undelivered tonnage of both the 2007 and 2008 Contracts, Judge Lifland exceeded his power and manifestly disregarded the requirement under the governing New York law that Integrity demonstrate with evidence that it was "ready, willing and able" to purchase all of the undelivered coal in order to receive damages for the full tonnage. (See A&G's Memorandum of Law in Support of Petition at 20-25). A&G argues that the $21 million Arbitration Award exceeded even what Integrity expected as A&G's potential liability. (See JR 36, 226-27.) A&G claims that Judge Lifland relied on "self-serving testimony" to satisfy the "ready, willing, and able" requirement of the governing New York law. (See A&G A&G's Memorandum of Law in Support of Petition at 22-25). Integrity disagrees, claiming that it was ready, willing, and able to take all the undelivered coal. There was evidence that Integrity continued for many months to request coal, even after A&G stopped making deliveries. (Cl. Exs. 30, 31, 43, 47, 50 & 55.) This evidence is also highly probative of Integrity's willingness and ability to perform. See, e.g., Argonaut P'shp v. Grupo Sidek, S.A. de C.V., 1996 U.S. Dist.

LEXIS 15925, at *20 (S.D.N.Y. Oct. 24, 1996) ("[P]laintiffs demonstrated that they were ready, willing, and able to perform their obligations . . . through their repeated insistence that defendant perform its obligations."); Traxys N. Am., LLC v. Concept Mining, Inc., 808 F.Supp.2d 853, 865 (W.D. Va. 2011) (aggrieved party's continued requests for deliver is evidence it would have taken coal); Viavom Outdoor, Inc. v. Wixon Jewelers, Inc., 2009 N.Y. Misc. LEXIS 3151 (N.Y. Sup. Ct. Nov. 18, 2009), aff'd in part, vacated in part on other grounds, 82 A.D.3d 604 (N.Y. App Div. 2011) (aggrieved party communicating desire to continue contracts established that it was "ready and willing to perform"); see also Matrix Realty Group, Inc. v. Food Mgmt. Group LLC, 2010 U.S. Dist. LEXIS 100749, at *29-30 (S.D.N.Y. Sept. 21, 2010).

Judge Lifland required Jerry Wharton to testify extemporaneously under cross-examination in the Final Hearing concerning the sums he allegedly received from the sale of A&G. A&G's allegation that Judge Lifland admitted certain purportedly objectionable testimony from Mr. Wharton is likewise insufficient to constitute manifest disregard of the law because this testimony was admissible. Even if a court might not have admitted Mr. Wharton's brief testimony, "[i]n handling evidence an arbitrator need not follow all the niceties observed by the federal courts." Bell Aerospace Company Division of Textron, Inc. v. Local 516, International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, 500 F.2d 921, 923 (2d Cir. 1974).

A&G argues that Judge Lifland "manifestly disregarded" the law in ruling on Integrity's "statement of monetary damages." (A&G Memorandum of Law at 24-25.) The UCC provided Integrity two alternative damage measures from which to choose. See UCC § 2-713(1). Integrity "withdrew its cover analysis of damages" in the statement of Monetary Damages and elected without objection to rely solely on a market-price measure of damages. (JR 877; Tr., Vol. II, at

340-43.) A&G argues that Judge Lifland erred because the market-price measure of damages ultimately yielded a number higher than Integrity had estimated in the "statement of Monetary Damages" that addressed the separate cover measure of damages. A&G has failed to identify any "well defined, explicit, and clearly applicable" proposition of law on damages that Judge Lifland supposedly ignored intentionally. Hence A&G cannot point to any clear law on damages that was brought to the arbitrator's attention that he disregarded. See GMS Group LLC v. Benderson, 326 F.3d 75, 78 (2d Cir. 2003). A&G cannot, having failed to take advantage of its opportunity at the arbitration to raise this issue and offer evidence supporting it, now claim that the Final Award was in manifest disregard of the law because Judge Lifland did not consider evidence that the parties failed to provide. Capgemini U.S. LLC v. Sorensen, 2005 WL 1560482, at *10 (S.D.N.Y. July 1, 2005).

E. "Manifest Disregard" of Parties' Agreement

A&G also argues that Judge Lifland "manifestly disregarded" the express written terms of the parties' 2007 and 2008 Contracts. An arbitrator's award may be vacated "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement." Schwartz, 665 F.3d at 452 (quoting Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997)). The Second Circuit "appl[ies] a notion of manifest disregard to the terms of the agreement analogous to that employed in the context of manifest disregard of the law." Id. "Thus, interpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because [courts] disagree with that interpretation." Id. (quotation marks and alterations omitted). See, e.g., Schwartz, 665 F.3d at 453 (rejecting argument that panel had manifestly disregarded terms of settlement agreement and release);

11

<u>Yusuf Ahmed</u>, 126 F.3d at 25 (rejecting argument that arbitrator had manifestly disregarded the terms of various contract provisions).

A&G argues that Judge Lifland "manifestly disregarded" the clear meaning of the parties' 2007 and 2008 Contracts, an independent ground for vacatur. (Petitioners' Opp. to Confirmation at 13). Both Contracts explicitly provide in Paragraph XIV of the General Terms and Conditions: "Any amendment or modification of this Agreement must be in writing and signed by both parties in order to be effective." A&G argues that Judge Lifland relied on an alleged unwritten agreement to fundamentally modify the 2007 Contract, in violation of the Contract's terms. Both Contracts further provide in Paragraph XIV: "This Agreement constitutes the complete and exclusive agreement between the parties hereto concerning the subject matter hereof." A&G argues that Judge Lifland disregarded this provision and credited an unwritten side agreement that significantly changed the meaning of the written "Schedule" on the 2008 Contract. A&G argues that Judge Lifland was aware of the Contracts' unambiguous terms prohibiting reliance on the alleged oral agreement, and he ignored them. (A&G's Memorandum of Law in Support of Petition at 16-20).

Finally, A&G argues that Judge Lifland strayed "from interpretation and application of the agreement and effectively dispense[d] his own brand of industrial justice." (A&G's Memorandum of Law in Support of Petition at 13-15). However, the claim that an arbitrator made a mistake of law or reached the wrong fact cannot support vacatur. See, e.g., <u>Leed Architectural Prods. v. United Steelworkers of Am.</u>, 916 F.2d 63, 65 (2d Cir. 1990) (court cannot overturn labor arbitration award even if arbitrator committed "serious error").

None of A&G's grounds supports a finding of vacatur. Judge Lifland was not biased or had undisclosed conflicts. A&G had presented its case in federal court in Virginia and arbitration

and lost. Judge Lifland did not appear to have ignored evidence or legal principles. A&G's disagreement with Judge Lifland's findings and conclusions does not provide a basis on which to overturn the Arbitration Award. Judge Lifland's Final Award is given extreme deference. A&G seeks relief that is exceeding "rare" and has not met the "exceedingly difficult" and demanding standard for vacatur. See Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007); Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Group, LLC, 491 Fed. Appx. 201 (2d Cir. 2012). The Arbitration Award is confirmed.

## CONCLUSION

After considering all of A&G's arguments for vacating the Arbitration Award, the Court finds them to be without merit. Therefore, the cross-petition to confirm the Arbitration Award is GRANTED [docket number 35], and the petition to vacate the Arbitration Award is DENIED [docket number 38].

Dated:     New York, New York
           May 21, 2013

SO ORDERED.

_____
ANDREW L. CARTER, JR.
United States District Judge